IDEAL PRODUCTS, INC.,           )   C/A No. 01A01-9807-CV-00348
                                )   DAVIDSON COUNTY
        Plaintiff-Appellee      )   Chancery Court, Part One
                                )   No. 96-1558-II(I)
        v.                      )
                                )
AGMARK FOODS, INC.              )
                                )
        Defendant-Appellant     )

**FILED**

**June 9, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

IN THE COURT OF APPEALS AT NASHVILLE

APPEALED FROM THE CHANCERY COURT, PART ONE, OF DAVIDSON COUNTY AT NASHVILLE, TENNESSEE


THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR


Larry D. Ashworth
227 Second Avenue, North
Nashville, TN 37201

Peter D. Heil
P. O. Box 40651
Nashville, TN 37204

        Attorneys for Plaintiff-Appellee

William R. O'Bryan, Jr.
W. Neal McBrayer
Kenneth M. Bryant
TRABUE, STURDIVANT & DEWITT
2500 Nashville City Center
511 Union Street
Nashville, TN 37219-1738

        Attorneys for Defendant-Appellant


VACATED AND REMANDED


**Houston M. Goddard, Presiding Judge**


CONCUR:


FRANKS, J.

O P I N I O N

This suit involves a commercial lease agreement entered into by Agmark Foods, Inc., Defendant-Appellant, with Ideal Products, Inc., Plaintiff-Appellee, for container chassis used in transporting commodities and bulk products. Agmark contends that the Chancellor improperly granted a summary judgment in favor of Ideal.

Agmark transports commodities and bulk products, and Ideal leases container chassis used in transporting commodities and products. On January 3, 1990, the two parties entered into a five-year "Master Lease Agreement," with Ideal agreeing to provide Agmark with chassis to transport its products.

A provision in the lease agreement gave Agmark the option to extend its contract beyond the five-year agreement "at a rate of 1.5% of the then current fair market value per month, per chassis." In September 1994, Pratt Enterprises, Inc., the manufacturer of the chassis, appraised the value of each chassis to be approximately $13,250. Ideal provided Agmark with Pratt's appraisal of the chassis. Agmark thought that the appraisal was excessively high and therefore, decided not to extend its lease agreement with Ideal. Agmark then returned the chassis to Ideal.

2

More than a year after Agmark had returned the chassis to Ideal, Ideal notified Agmark that it needed to pay $44,598.18 in repairs to the chassis. When Agmark refused to pay for the repairs, Ideal initiated legal action. After a hearing on March 13, 1998, the Trial Court granted a summary judgment to Ideal. Agmark now appeals that decision.

Agmark presents for our review four issues, which we restate, that should have precluded the Trial Court's grant of summary judgment:

> 1. Whether Ideal's first material
> breach of the equipment lease
> precludes or limits its recovery
> from Agmark;
>
> 2. Whether Ideal is equitably
> estopped from recovering for the
> alleged repair bills against
> Agmark;
>
> 3. Whether Agmark failed to adequately and
> competently maintain the equipment in
> accordance with the terms of the equipment
> lease; and
>
> 4. Whether Ideal's laches precludes
> its recovery in this case.

Agmark argues that the Trial Court erred in granting summary judgment because genuine issues of material fact exist. Agmark's first two issues pertain to a breach of the lease agreement and the amount of estimated repairs required for the

chassis.  Among Agmark's assertions is that Ideal breached the lease agreement by its failure to act in good faith regarding the extension of the lease agreement.[1]  Paragraph 25 of the lease agreement provided Agmark with an option to extend the agreement on a month-to-month basis at 1.5% of the current fair market value of the equipment:

> 25.  <u>Contract Extension</u>.
> Agmark Foods has the option to extend the lease on a month to month basis beyond the original 60 months, at a rate of 1.5% of the then current fair market value per month, per chassis, but in no case shall the per month, per chassis, rate exceed the original rate. Agmark Foods shall give LESSOR two month's prior written notice of such election to extend.

Agmark contends that shortly before the end of the lease agreement, Ideal notified Agmark that the fair market value of the chassis it had leased was approximately $13,250 per chassis.  Pratt Enterprises, the manufacturer of the chassis and the seller of the chassis to Ideal, supplied Ideal with the appraisal.

Ideal maintains that the chassis were worth this amount because they were in "excellent running condition," and all required warranty work had been performed by Pratt Enterprises.

---

[1]Agmark also argues that Ideal breached the agreement by failing to provide the specified equipment and by over billing it.

Based on Pratt's appraisal, the monthly rental rate on the chassis would have been approximately $200 per chassis, an amount Agmark considered excessive. Thus, Agmark decided not to exercise its option to extend the lease. After Agmark returned the equipment to Ideal, Ideal sold eight chassis to Pratt for $7,000 per chassis, not $13,250 as Pratt had appraised each chassis only months before. Agmark contends that had Ideal offered the chassis to it at $7,000, it would have exercised its option to extend its contract with Ideal because at that appraisal, the rental rate would have been approximately $100 per month for each chassis, not $200 per month.

Agmark contends that Ideal preempted Paragraph 25 of the lease agreement by its "unreasonable assertions of value" of the chassis. Agmark further argues that because it could not extend the lease for the chassis at a fair rate, it had to obtain other equipment, which cost more than the leased chassis would have cost had the lease been extended under Paragraph 25.

Agmark asserts that Ideal represented to it in a letter dated January 24, 1995 that the repair bills, if there were any, would be forwarded to Agmark. However, Agmark asserts that no repair bills were sent to it before Ideal initiated this lawsuit more than a year after the chassis were returned to Ideal, and during this time, no claims were asserted by Ideal for the repair

5

costs.  Furthermore, Agmark asserts that Pratt, which had represented only a few months before the end of the lease that the leased equipment was in "excellent running condition," also supplied Ideal with a repair estimate for rebuilding the chassis and ignoring the exception for "normal wear and tear" in the lease agreement.

Ideal argues that there are no disputed material facts regarding the amount of damages of $44,598.18 and that Agmark should be held to the express terms of the lease agreement it signed.  Paragraph 9 of the lease agreement states:

> 9. <u>Maintenance and Repairs: No Waiver by LESSOR: Condition on Return</u>.  . . . Upon  receipt of LEASED EQUIPMENT by LESSOR, the amount of damage to such LEASED EQUIPMENT for which LESSEE is responsible shall be conclusively established at an off-hire inspection by LESSOR, except that if requested by LESSEE prior to return of LEASED EQUIPMENT, such off-hire inspection will be conducted by a qualified contractor mutually agreed upon between LESSOR and LESSEE, at the expense of LESSEE.  Such independent inspection must occur within four (4) days of return of LEASED EQUIPMENT or LESSOR's determination of repair cost will control.

Ideal asserts that both parties are "sophisticated corporate entities that entered into this Master Lease Agreement

6

at arms-length."  Ideal maintains that Agmark is responsible for damages to the chassis under the express terms of the contract.

Ideal explains that Pratt's appraisal of $13,250 was determined by using numbers from its sales department and assumed that the chassis would be in excellent running condition since all the warranty work had been performed.  Ideal contends that "if Agmark thought the valuations were excessive, nothing prevented it from obtaining its own estimates of fair market value and offering to exercise its option based on such valuation."  Finally, Ideal argues that because it relied on fair market value estimates determined by Pratt, the manufacturer of the chassis, it could not have been acting in bad faith.

A Trial Court's decision to grant a motion for summary judgment is not entitled to a presumption of correctness on appeal. <u>Carvell v. Bottoms</u>, 900 S.W.2d 23, 26 (Tenn. 1995).  This Court determines whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met.  <u>Mason v. Seaton</u>, 942 S.W.2d 470, 472 (Tenn. 1997).  An evaluation of a summary judgment motion must address these questions: "(1) whether a <u>factual</u> dispute exists; (2) whether the disputed fact is <u>material</u> to the outcome of the case; and (3) whether the disputed fact creates a <u>genuine</u> issue for trial."  <u>Byrd v. Hall</u>, 847 S.W.2d 208, 214 (Tenn. 1993).  In a motion for summary judgment, the evidence must be viewed in a light most favorable

7

to the nonmoving party, and all reasonable inferences must be made in the nonmoving party's favor. Byrd, 847 S.W.2d at 210.

This case arises from a dispute between Ideal and Agmark over alleged repair costs and appraisals of the fair market value of several leased chassis. Both parties are indeed corporate entities that appear to have entered freely into a lease agreement. Both parties are also charged with a duty to deal fairly and in good faith with one another.

Based upon the record before us, Pratt Enterprises, Inc., a third party, appears to have played a significant role in the relationship between Ideal and Agmark regarding the repair costs and the appraisals of the chassis. Pratt manufactured the container chassis and sold them initially to Ideal. Pratt provided the appraisal of the fair market value of the chassis to Agmark a few months before the lease was to expire. Pratt completed all the warranty work on the chassis. Pratt provided the estimate of repairs that were allegedly required after Agmark returned the chassis to Ideal. Pratt purchased eight chassis from Ideal for approximately one-half the fair market value it had estimated the chassis to be worth only months before.

In light of the foregoing, we believe a reasonable inference could be drawn that the value of the returned chassis

8

exceeded the price contended by Ideal and that there are genuine issues of material fact which must be determined by trial.

The judgment of the Trial Court is vacated, and the cause is remanded for further proceedings consistent with this opinion.  Having concluded that summary judgment was not properly granted in our consideration of Agmark's first two issues, we need not address its remaining issues.  Costs of appeal are adjudged against Ideal.

                                    _____

                                    Houston M. Goddard, P.J.

CONCUR:

_____
Herschel P. Franks, J.

___(Not Participating)_____
Don T. McMurray, J.

9